**UNITED STATES of America, Appellant,**

v.

**John M. BOGDAN, Defendant, Appellee.**

**No. 02–1655.**

United States Court of Appeals, First Circuit.

Heard Aug. 1, 2002.

Decided Sept. 5, 2002.

---

14

Dina Michael Chaitowitz, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, were on brief, for appellant.

R.J. Cinquegrana, with whom Choate, Hall & Stewart, were on brief, for appellee.

Before BOUDIN, Chief Judge, GIBSON,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

PER CURIAM.

This case involves a sentencing appeal, brought by the government, after the district court granted the defendant a downward departure. Because we find that the downward departure was inappropriate, we vacate the defendant's sentence and remand the case for resentencing.

---

* Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

1. The district court's precise explanation for its departure was as follows:

I have taken into account the excellent way that you have been a father to your children, how you have tried to make amends to your wife, the introspection you

## I.

On December 4, 2000, John M. Bogdan ("defendant" or "Bogdan"), pursuant to a plea agreement, pled guilty to two counts of mail fraud, in violation of 18 U.S.C. § 1341. The plea agreement stipulated that Bogdan's total offense level was 15, resulting in a guideline sentence range of 18 to 24 months' imprisonment. The plea agreement also provided that Bogdan could move for a downward departure based on aberrant behavior; the parties agreed that no other basis for departure was applicable.

At the sentencing hearing, the district court accepted the agreement's guideline sentencing range, but rejected defendant's request for a downward departure based on aberrant behavior. Instead, the court, sua sponte, found that the defendant's family relationships and acceptance of responsibility placed him outside the "heartland" of the guidelines, thereby warranting a downward departure.[1] The district court sentenced Bogdan to 366 days' imprisonment—a downward departure of six months—and two years of supervised release.

The government appealed the downward departure to this Court. After reviewing the district court's justifications for its departure, we reversed the defendant's sentence, holding that the circumstances of his case did not fall outside of the heartland of the guidelines, and remanded the case to the district court for resentencing. See United States v. Bogdan, 284 F.3d 324 (1st Cir.2002).

have shown, the appreciation you have shown of the criminality of your conduct.... In my considered judgment, you, you, John Bogdan, are not within the heartland of offenders that the sentencing guidelines are designed for. That gives me the right to depart.

The district court held a new sentencing hearing on May 2, 2002. At that time, Bogdan was close to completing the original sentence of 366 days and was serving the remainder of the sentence in home confinement under the authority of the Bureau of Prisons ("BOP"). Bogdan had served approximately four months at the Camp at Fort Devens, followed by five months in community confinement, and then was placed in home confinement, from which he was scheduled for release on May 16, 2002. The court, although acknowledging that it had to impose a term of 18 months' imprisonment on defendant to adhere to the guidelines, nevertheless stated that "[I]t would be an unconscionable burden to have [defendant] go through the stages of confinement and now begin to emerge at the end and then go back, for no reason other than that [the court] made a mistake, into a more severe system of confinement." As a result, the district court sentenced Bogdan to 18 months' imprisonment, with credit for time served, and 24 months' supervised release, but issued an order directing the BOP to keep defendant in home confinement for the remainder of his sentence. The court's judgment was entered on May 10, 2002.

After the resentencing hearing, the BOP informed the government that under 18 U.S.C. § 3624(c) it lacked the authority to place Bogdan in home confinement for the entire remainder of his new sentence.[2] Under § 3624(c), home confinement is only an option for the BOP during the last ten percent of a defendant's sentence. Thus, under Bogdan's 18–month sentence, Bog-

dan would only be eligible for home confinement in September 2002. Pursuant to this information, on May 10, 2002, the government filed a motion to strike the portion of the judgment ordering home confinement for the remainder of Bogdan's sentence.

On May 13, 2002, the court denied the motion and entered a margin order. The order stated that the resentence "constituted a downward departure, well within the Court's authority," and that "[i]f the government will not follow the Court's order, Mr. Bogdan is to be released to the U.S. Probation Office who will supervise the remainder of the sentence."

Despite this margin order, on May 16, 2002, the district court issued an amended judgment, changing defendant's sentence to 366 days' imprisonment and 24 months' supervised release. The amended judgment ordered that the first six months of supervised release be served in home confinement. The district court indicated that this amended sentence reflected a downward departure and stated its reasons for the departure as follows:

> An exemplary prisoner who has substantially completed his original sentence, Mr. Bogdan is serving the remainder of his sentence in home confinement.... Correcting that sentence at this juncture, however, will have the consequence, not merely of extending the time to be served, but will as well cause Mr. Bogdan to be confined under more severe conditions which will interfere with the rehabilitative aspect of Mr. Bogdan's sentence.

---

**2.** Section 3624(c) provides:

> (c) Pre-release custody.—The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, *of the last 10 per centum of the term to be served* under conditions

that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

18 U.S.C. § 3624(c) (emphasis added).

This situation is a "mitigating circumstance of a kind ... not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. It warrants the departure and carefully crafted sentence imposed here in order to carry out the mandate of the United States Court of Appeals for the First Circuit.

The government appeals this amended sentence, asserting that the district court lacked jurisdiction to correct the sentence, or alternatively, that the district court abused its discretion in granting a downward departure.

## II.

We review district court departures under the Sentencing Guidelines for an abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 96–100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). This entails a three-part analysis: (1) we determine whether the stated ground for departure is theoretically permissible under the guidelines; (2) if so, we examine the record to assess whether there is adequate factual support; and (3) we determine the appropriateness of the degree of departure.[3] *See United States v. Dethlefs*, 123 F.3d 39, 43–44 (1st Cir.1997). In most cases, a district court's decision to depart will "be due substantial deference." *Koon*, 518 U.S. at 98.

## III.

In this case, increasing the defendant's sentence or subjecting the defendant to a more severe form of incarceration due to previous judicial error is not grounds for a downward departure. A court is permitted to depart from the guidelines sentence if "there exists an aggravating or mitigat-

ing circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b).

In determining whether an aggravating or mitigating circumstance warrants a departure, the court first must assess what features of the case potentially make it unusual so as to take the case outside the heartland. *See Koon*, 518 U.S. at 95. Then the court must determine whether the factor is proscribed, encouraged, or discouraged under the guidelines, or whether the factor is not mentioned in the guidelines. *See id.* at 95–96. If a factor is not mentioned in the guidelines, "the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether [the factor] is sufficient to take the case out of the Guidelines's heartland." *Id.* at 96 (citation and internal quotation marks omitted). Departures based on unmentioned factors should occur only in exceptional cases. *See Koon*, 518 U.S. at 96 (noting that such departures should be "highly infrequent").

In this case, the factor relied upon by the district court for departure—an increased sentence and reincarceration in a more severe form of confinement due to previous court error—is not a factor mentioned by the guidelines. Therefore, departure is only permitted if this factor makes Bogdan's case so unusual or special so as to take it out of the heartland of the guidelines. *See Koon*, 518 U.S. at 96. In this case, we find nothing special or unusual about Bogdan's increased incarceration due to previous sentencing error. Although unfortunate, some sentencing errors under the guidelines are inevitable. This, in part, is due to the sheer complexi-

---

**3.** Because the government challenges the district court's grounds for departure as inappropriate in this case, and we agree, our

analysis rests only on the first prong of the inquiry.

ty of the guidelines, compounded by the fact that "[t]o err is human," *In re Bush-kin Assocs., Inc.,* 864 F.2d 241, 245 (1st Cir.1989) (noting that judges "are not infallible"). The guidelines, predicting this problem, however, provide for a means by which to correct such sentencing errors: appellate review. *See* U.S.S.G. Ch. 1 Pt. A ¶ 2; 18 U.S.C. § 3742(b)(2).

 Under a simplified view, there are two kinds of errors to be corrected on review: sentences that are either too long or too short under the guidelines. Where the defendant received too short a sentence, to correct its error, the court must be able to impose a more severe sentence. Otherwise, "[p]ermitting a downward departure to avoid reincarceration where an erroneously lenient sentence is successfully appealed would have the perverse effect of compounding judicial error." *United States v. Yeaman,* 248 F.3d 223, 232 (3d Cir.2001) (rejecting downward departure for two defendants on the grounds that they had already completed erroneously lenient sentences and had been released from custody); *cf. United States v. Martin,* 221 F.3d 52, 57 (1st Cir.2000) (prohibiting departures based on "factors that offend the framework and purpose of the guidelines"). Thus, increasing a defendant's sentence and confining him in prison is a typical error correction contemplated by the guidelines' structure. *See United States v. Goldman,* 41 F.3d 785, 789 (1st Cir.1994); *see also Yeaman,* 248 F.3d at 232.

We have previously held that there is "no general rule that prohibits a court from increasing an earlier sentence where the court finds that it was erroneous and that a higher sentence was required by law." *Goldman,* 41 F.3d at 789 (quoting *DeWitt v. Ventetoulo,* 6 F.3d 32, 34 (1st Cir.1993)) (internal quotation marks omitted). Although we have indicated that the right to correct an unlawful sentence may be limited in extreme circumstances, *see Goldman,* 41 F.3d at 789 (discussing combined factors of a long delay, defendant's release from custody, and the singling out of defendant for a sentence increase based on commission of another offense), we find no such extreme circumstances to be present in this case. Bogdan is still in federal custody and has been aware of a dispute over his appropriate sentence since the filing of the original appeal in this case. As a result, his increased sentence and return to more severe confinement are not factors that place Bogdan's case outside the heartland.[4]

## IV.

Because we conclude that the district court's downward departure was inappropriate, we vacate the defendant's amended sentence and remand the case to the district court for imposition of a sentence within the guideline range of 18 to 24 months' imprisonment, with credit for time served, and 24 months' supervised release.

***Vacated and remanded.***

---

4. In addition to arguing that the court's basis for departure was inappropriate, the government asserts that because the district court lacked jurisdiction on May 16, 2002 to amend Bogdan's sentence under Federal Rule of Criminal Procedure 35(c), the amended sentence should be vacated. The government argues that the May 16 amendment occurred more than seven days after imposition of defendant's sentence and was more than a correction of an "arithmetical, technical, or other clear error." Fed.R.Crim.P. 35(c). Because we have already found that the district court's departure in its amended sentence was an abuse of discretion sufficient to vacate the sentence, we need not address this jurisdictional issue.